I'm Mark Werner. I represent Egonn Brady. This is a sentencing appeal of a major variance to 72 months in a failure to register case. The district court was struck by Brady's personal history and his criminal history to such a degree that it imposed a variant sentence of 6 months over twice the guideline range. Brady basically is challenging the district court's approach and how it considered the 3553A sentencing factors. For example, the court stated that this 72 month variance would reflect the seriousness of the offense. But in the record there was nothing that the court noted or did it appear that was extreme or extraordinary about the offense conduct. I had the impression that what impressed the judge was that this fellow looks like a real desperado rather than this particular occasion for him coming to court. And actually what struck me most reading the record and my guess is that probably most of us judges react the same is when he beat up a cop. That's kind of unusual. Usually people pretty much cave when the police bust them. Beating up a cop is extreme and it looks like that's his whole life. Just a reckless desperado, scared of nothing, totally unrestrained, doing whatever he pleases at all times. And the judge thought something's got to either change this guy or else cage him up for a long time. That looks to me like just the sort of discretionary judgment that judges are supposed to make under 3550. Now that the guidelines are just advisory. Why don't we have to defer? Your Honor, because the case law that I'm referring to is particularly the Wessom case, which would indicate that when there's this major of a variance, there needs to be a more balanced and broad set of reasoning. Wessom, it was a little harder to understand why the judge was doing what he was doing. Here's a major international terrorist planning, I think it was the Millennium bombing. Blow up LAX on the Millennium or something like that and the judge let him off lightly. It was a little harder to understand than caging up a desperado for a while. Yes. And I cite Wessom for the principles that it has stated. Basically, it appeared to me that Judge Siebel did not give equal weight, as this court has said he must, and considered throughout what the sentencing guideline was. Two, he relied exclusively, as you say, on the defendant's personal history and circumstances. Now Wessom cited favorably several out-of-circuit cases. And Wessom said, just because the court announces this is a variance, doesn't mean that it was considering throughout what the guideline range was and how it should impact things. But it cited several out-of-circuit cases which found substantially unreasonable variances, where the district court relied on one factor always, personal history and characteristics, because it can't set a judge off, and gave little or no weight to, well, does the sentence match the gravity of this offense? Well, it's not just this offense, it's also this offender. Correct. Correct. But whether or not it matched the serious offense, the judge appeared to give no weight to. He said, I will consider all the factors, including whether or not it would achieve sentencing, avoid sentencing disparity, but it's hard to understand how this kind of a sentence would avoid that kind of disparity among failure to register defendants in the same criminal history category. Brady certainly acknowledges, Your Honor, that his failures in the criminal history area were continuous. At some points, egregious. But, of course, that to some degree accounted for the fact that he was in criminal history category five. It is, and you're right about that. The only thing is we also see fives when really all the person is is a drunk, and he just keeps piling up those drunk driving convictions and various kinds of disorderly conduct in public when he's drunk. This fellow looks a little wilder. He was a little wilder, but it appeared that that criminal history category, which is pretty high, one of five, basically was given no credit for accounting for any of his personal or criminal history by the district court. So it's kind of a combination of errors that we think the judge abused his discretion on, but mainly considering only, only the personal characteristics and history, and basically other than reciting the guideline range in the calculation, not paying attention to it the rest of the way. Now, I cited, but more important, this court in Wressom cited as a principle for a major variance, the United States' Mohammed case. That was the bomb threat case. I think Judge Sheen was on that panel, and it cited it favorably because that was a major variance, and there was a breadth of factors that were considered. First of all, in Mohammed, they considered the guideline range more than just reciting it. They said, you know, this guideline range, the sentencing commission seems to say that this may not be adequate to account for this broad range of conduct that's in this offense statute. Secondly, let's take a look at this offense conduct. We have to consider that, too, because 3553A says you have to consider both, not just one. And the offense conduct caused a lot of impact to law enforcement and government agencies. Businesses were shut down. Many innocent people were affected. Then it looked at his personal characteristics and history and said, you know, he's only in criminalistic category one. I'm still having a hard time putting my finger on exactly what he did wrong here. He calculated the guidelines correctly. He did. He knew what the range was. He explained why he wasn't going to follow it. If you had 25 words or less, what exactly did he do wrong that's outside of his discretion? He did not consider anything other than one aspect of 3553A, and he should have considered whether or not the sentence that he was going to vary up to, how that would have matched the seriousness of this offense. He should have considered, is this really going to achieve or avoid sentencing disparity, and he didn't either of those. Well, didn't he say, your guy's done poorly on supervision. He's an untreated sex offender. I mean, what more would he have to say to satisfy his obligation here? I don't quite get what he should have said and didn't. Because Ressam, I think, teaches us, I think the court said, that when you're going to have a major variance, your explanation has to be more broad than just relying on one aspect of this person's person, i.e., his offender characteristics. You have to look at what 3553A says you have to look at. You have to look at the nature of the offense. Does it fit this big of a variance? Does it fit the… Well, the maximum sentence is 10 years, right? Maximum is 10 years. He got seven. Yeah. Right. Six. I guess he got six. Six. He got 72 months. I'll go ahead and reserve you. Okay. Thank you, Mr. Ruler. Thank you. Good morning. Good morning. May it please the court and counsel, I'm Marcia Hurd from the District of Montana. I handled this case below and handled it also on appeal. I think, Judge Kleinfeld, you hit the nail on the head. This is a defendant whose life history characteristics, his criminal history and his attitude while on supervision, his dangerousness to the public was what Judge Siebel was getting at here. He's got a number of years of basically just doing whatever it is that he cares to do, whether he's been told to do something on supervision or not. And I think that's what the judge was trying to get at, a broad-based 3553A. What worried me the most about the sentence was it looked like Brady got himself especially crosswise with the court by being obnoxious with the probation officer. I think that was one thing. But that's not the general public. It used to bother me when I did criminal defense that if my guy was real obsequious to the probation officer, he could get a very low sentence. And if he wasn't, he would get hammered because it wasn't a good measure of his danger to everybody else. Correct. And as far as everybody else goes, a lot of his offenses are that he's just a drunk. He is a drunk, but he's a drunk who does things while he's drunk that are a danger to the public. Sometimes. Sometimes all he does is urinate in public or have an open container or something. True. And sometimes he assaults police officers, kicking them while they're down and trying to get to their guns, committed the sex offense while he was drunk. Those were the worst. Yeah. Domestic violence cases while he was drunk and basically says, I'm not a drunk. I can stop. I guess he doesn't have a car, huh? No. I don't think so. But basically he just says, I can stop drinking or taking drugs whenever I want to. I don't have a drug problem. I don't have an alcohol problem. I don't have a sex problem. And he just isn't supervisable by anybody. The criminal history category five argument kind of concerned me at the beginning. I thought, well, that's a pretty good. Does he lack insight or does he just think he doesn't have an alcohol problem as long as he can get enough alcohol? I think that's exactly it. He probably, my impression was that he kind of runs on about a .15 all the time, and that's just the lifestyle he's affected. And it's worked for him so far because his incarceration has been small compared to what it is that he's done. But if you look at his criminal history category five, that's for simply just three offenses. That only takes into account the abusive sexual contact where he got three points. Two points for domestic violence, and then he got another six points for the failure to register charge, three for the offense, two for being on probation when he committed this offense, and another one for being less than two years from his release. So the criminal history category five sounds huge, but the point is it only takes into account a small bit of what it is that he's done over all these years. It doesn't take into account his other domestic violence, his other DUI, his assault on a police officer, and certainly doesn't take into account all the times he's been told by a court to do something. What did you ask for, Cindy? I said the high end or higher. Basically, I said... You see, what bothers me about this case is this is what you would call a regulatory offense. I mean, he didn't do anything to anybody at this time, right? He just, you know, forgot or intentionally, you know, didn't register, I mean, and it seems like a harsh sentence for that kind of a crime, and so it requires, as Wessom says, you know, because it's so outside the guidelines, some kind of extra explanation. And everything you said so far is really taken into the guidelines calculation. So when you say, well, we want the high end or higher, well, you know, this is just way beyond the higher high end. It is. That's what bothers me about it. And so you would expect, you know, a more, I don't know, just something more in the way of an explanation than, you know, this is just ordinary recitation seems to be. Well, Your Honor, I'm... And Wessom says that's not enough when you really depart, right? That's true. That's what Wessom says. I mean, Wessom, I believe, was about three times the high end. Here we're at two times the high end plus six months. But I think he did say the things that he was relying on and didn't just kind of recite the statute. He talked about how it was his history and characteristics were striking, that this was the third time he was a federal felon. He'd done poor land supervision after his sex offense. He was revoked several times. And the quote was, you've done little since but commit crimes. Failed to abide by any of the probation or court orders. Was uncooperative and belligerent with the probation officer. The fact that he's a level three untreated sex offender. This is a person in the community where we want to know where he lives. Well, you see, that phrase alone, level three untreated sex offender, is a little bit misleading because he was never required to undergo treatment, right? That's correct. I mean, what does that mean? I mean, you know, I'm untreated, you're probably untreated, but no one asked you to get treatment, right? He was not ordered to get treatment because the sex offender professional said, don't even bother. This is a guy who will be a cancer in a group. He is that dangerous, that unsupervisable. So basically, he's going to get worse if you try to put him in treatment. And that was the reason he was not ordered to. I thought it was also that he isn't the standard sort of sex offender that gets treatment. They're usually pedophiles. Somebody who's in his 20s, and as I remember, this guy was in his 20s, and a 15-year-old girl asked him to get booze for her. And he did, and they got drunk, and he had sex with her when they were all drunk. That is not a pedophile. Correct. But often in cases like this. That's not something you usually treat in those sex treatment things. Well, I think that it's a different form of sex offender treatment. It goes to, because it wasn't like it was a 15-year-old. It's either real rape or stat rape. Right. And in this case, she was passed out during one of the offenses, the second offense, and could not even consent in the first offense. He probably wasn't in good shape to consent himself. Yeah, that could very well be. And what the sex offender person who evaluated him said was that he would get worse as he went on. And the court did talk about the fact that the protection of the public was a factor in this case that required extreme consideration. Just because this is a guy who never does what he's supposed to do, doesn't follow the law, has this history of domestic violence, the sex offense, the violent offense against the police officer, the DUIs. And the judge's quote was, it is only while you are incarcerated that the public is protected from further crimes by you. Incidentally, something I couldn't figure out here, how does he support himself when he's not incarcerated? I think this is a pretty typical situation that we see on a lot of the reservations where they're living with family members, maybe surviving on a per capita check that they may get from the tribe for being a tribal member. And the court also talked about the fact that his danger to recidivate was extremely high. And that he was, quote, an extreme danger to society. And so the judge in this case said everything he needed to say. And the part I guess I was unclear in this appeal was, what more did he need to do? Should he have talked about the guidelines more than he did? I mean, it was clear the judge said, look, I'm going way above, and here's why I'm going way above. And I think that he covered all of the things that he needed to say without putting any particularly heavy weight on one aspect of 3553A versus any of the others. And he did say several times that it was not within the advisory guideline range, but it was certainly within the statutory maximum. And I think protection of the public from this guy was a big thing for Judge Siebel in this case, just given how it was that Egon Brady seems to live his life believing that the rules don't apply to him. Are there any other questions from the panel? I don't think so, Miss Hurd. Thank you very much. Thank you. Mr. Werner, back to you. 3553A demands that a court consider not just the nature and personal characteristics of a defendant, but the nature and circumstances of the offense. I'm well aware of the due deference that's due to a district court, even the deference due when they are determining the extent of the variance. But the Supreme Court in Gaul said that a reasonableness review implies that sometimes, under some circumstances, an appellate court has to reverse. And a non-guideline sentence isn't reasonable with a major variance if the explanation isn't sufficiently compelling. I refer to the Muhammad case as a case which did provide a compelling explanation that covered the offense conduct, his personal nature, the guidelines themselves, why they wouldn't work. This explanation was a lot different, and it wasn't compelling. It hammered on one thing. The pre-sentence report said that he was not required to complete sex offender therapy as a result of his federal conviction in 2001. That's all I know about that, just what the pre-sentence report said. So, Your Honor, I think what needed to be done, the court had to consider this more broadly, because it was taking a big step. It couldn't just double a person's line, relying upon things about his past that it didn't like. And I understood it. I would have understood a high-end guideline sentence, or perhaps a little bit more. But this went way beyond that.  And it has to be more broad than just the one factor that his criminal history is ragged. And so is he. There has to be more here. Thank you. Good. Mr. Werner, thank you. Ms. Hurd, thank you, too. Good argument by both sides. We will stand and recess the case as submitted. Thank you.  Thank you. Thank you.
judges: Kleinfeld, Tashima, Silverman